UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RANDALL BURRUS, ) <br> ) <br> Defendant. ) | Case No. 20-MJ-3044 |

## MOTION OF THE UNITED STATES FOR PRETRIAL DETENTION

COMES NOW the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, and Assistant United States Attorney, Crystal C. Correa, and hereby moves the Court to detain the defendant pursuant to Title 18, United States Code, Section 3142(f)(1)(E), pending trial or other resolution of this case. As a basis for this request, the United States submits the following:

1. On April 16, 2020, the Court signed a criminal complaint and arrest warrant for the defendant. The criminal complaint charged the defendant with unlawfully possessing a firearm after having been convicted of a felony, and after being convicted in any court of a misdemeanor crime of domestic violence in violation of Title 18, United States Code, Sections 922(g)(1) and (g)(9).

2. The defendant poses a danger to others in the community if released.

3. The defendant poses a risk of flight if released.

4. No condition or combination of conditions will reasonably assure the defendant's appearance as required, and the safety of any other person and the community.

## ANALYSIS

### I. The Bail Reform Act

Pretrial release or detention is controlled by the Bail Reform Act of 1984. *See* 18 U.S.C. § 3141 et seq. Under 18 U.S.C. § 3142(f)(E), a judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of the defendant upon motion of the government when the defendant has been charged with a felony that involved the possession or use of a firearm. A defendant should be detained if there are no conditions that will *either* (1) reasonably assure the appearance of the person as required, or (2) reasonably assure the safety of any other person and the community. *See United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985) ("[A] finding of either danger to the community or

2

risk of flight will be sufficient to detain the defendant pending trial.").

The burden of proof is different for the risk of flight and danger analyses. In order for a defendant to be detained under the danger prong, the United States must prove by clear and convincing evidence that no condition or set of conditions will ensure the safety of the community. 18 U.S.C. § 3142(f)(2)(B). For a defendant to be detained under the risk of flight prong, the United States need only prove by preponderance of the evidence that no conditions will ensure the defendant's appearance in court. *Portes*, 786 F.2d at 765.

## II. <u>Detention Hearing Procedure</u>

The Bail Reform Act provides that the court "shall hold a hearing" to determine whether sufficient conditions for release exist. 18 U.S.C. § 3142(f). In determining whether there are sufficient conditions of release, the court is to consider several factors, including: (1) the nature and circumstances of the charged offense (including whether the offense involves narcotics, is a crime of violence, involves terrorism, involves a minor victim, or involves firearms or explosives); (2) the weight of the evidence against the person; (3) the history and characteristics of the person (including character, physical and mental condition, employment, family ties, length of residence in the

community, community ties, past conduct, history of drug or alcohol abuse, criminal history, and record of appearance at prior court hearings); and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. 18 U.S.C. § 3142(g).

The rules of evidence pertaining to criminal trials do not apply at detention hearings, and the court may rely upon hearsay evidence, including hearsay evidence presented by way of proffer, when weighing these factors and determining if detention is warranted. 18 U.S.C. § 3142(f); *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996) (collecting cases holding the government may proceed solely by evidentiary proffer at a detention hearing).

### III. <u>**Nature and circumstances of the charged offense**</u>

The defendant came to the attention of law enforcement after investigators were alerted to online chat message groups espousing hate for those of the Jewish and Islamic faith on chat applications including Discord. These chats discussed prior mass killings by other racially motivated terrorists and identified two potential targets in Illinois and Massachusetts. On March 18, 2020, law enforcement determined that one of the members participating in the online chats was chatting from a specific internet protocol

(IP) address. Law enforcement determined that the IP address was registered in the defendant's name with service at the defendant's residence.

A review of the defendant's criminal history shows that the defendant had a prior felony conviction for violation of an order of protection in Shelby County Circuit Court case 2003-CF-149. As a result of this conviction, the defendant is prohibited from possessing firearms.[1] Given the discussion on the chats related to both the use of firearms and explosive devices to harm others, and information from sources who indicated that the defendant possessed firearms despite being a prohibited person, law enforcement sought and received a search warrant to search the defendant's residence.

On April 15, 2020, law enforcement recovered two guns from the defendant's premises: (1) a Ruger Mini 14 long gun, which is a semi-automatic rifle; and (2) a Springfield Armory XD-40 pistol. In addition to the firearms, agents found several firearm magazines both loaded and unloaded with live rounds, numerous boxes of ammunition in .223, 5.56, and .40 calibers along with 2 shotgun shells. See Government's Exhibits 1-4.

---

1 According to the defendant's criminal history, it appeared that he had a domestic battery conviction stemming from a 2003 Christian County conviction in case docket 03-CM-48, however the Government received a certified copy of conviction from the Christian County Circuit Court indicating that the defendant pleaded guilty pursuant to an information to a class A misdemeanor of battery, not domestic battery.

Upon arrival at the residence, the defendant was questioned about whether he possessed any firearms. The defendant was specifically asked whether law enforcement would find any weapons inside the defendant's residence or garage. The defendant denied the existence of any weapons on the premises. Once law enforcement found the firearms, the defendant admitted to their existence and admitted to owning the weapons. When questioned about where he was able to purchase the firearms, the defendant stated that he purchased them on the "black market." When asked what the defendant meant by "black market" the defendant responded, "you go to a city and tell a black guy what you want." According to the defendant, he purchased the pistol in Chicago, Illinois and the rifle in Louisville, Kentucky. The defendant stated that he purchased the weapons when Obama was president. Although the defendant initially said he had not shot any weapons since 1999, after the discovery of the firearms, and the discussion of where he purchased the firearms from, the defendant admitted to shooting the firearms on a nearby farm approximately two weeks prior.

In relation to the internet chats, the defendant denied participating in the chats, but indicated that his minor son likely was responsible for the chats. The defendant denied influencing his son's ideology or racial animus

6

that was evident in the chat messages. However, when the defendant was asked whether or not he had any anti-Semitic or racial views, the defendant stated that, "he did not have anything against the Jews, I just think they're too involved in our government and our government does Israel's bidding."

When law enforcement asked the defendant if there were any other weapons on the premises, the defendant stated, "not on these premises." Agents then asked the defendant if he had any other land, and the defendant responded, "nope, I don't." The defendant was arrested for unlawfully possessing firearms and taken into custody.

After the defendant's arrest, law enforcement was contacted by a former friend of the defendant. According to the friend, he allowed the defendant to keep a trailer on his property. The trailer had been on the property for approximately two years. Prior to the defendant's relocating of the trailer to the friend's property, the trailer was located on the defendant's premises. The defendant had regular access to the trailer, and according to the friend, the defendant accessed the trailer approximately two months prior. The friend and the defendant had a falling out over what the friend described as the defendant's "going off the deep end" when it came to his anti-government beliefs. This resulted in a splintering of the friendship. The

7

friend gave law enforcement permission to take the trailer. The defendant's adult son also informed law enforcement that he believed the defendant had taken firearms to the same friend's residence, but assumed the defendant had taken the firearms back after the friendship ended.

On April 17, 2020, law enforcement obtained a search warrant to search the trailer. On April 17, 2020, law enforcement recovered 3 pieces of level III AR 500 Armor Strike body armor and 5 ziploc baggies containing a total of approximately 2,131 rounds of .223 and/or 5.56 ammunition. See Government's Exhibits 5-7.

On April 17, 2020, the defendant appeared before the Court for an initial appearance. At no point during the hearing did the defendant indicate he owned a trailer.

### IV. The weight of the evidence against the defendant

The weight of the evidence against the defendant is very strong. The defendant admitted to possessing the firearms. The defendant was aware that he was prohibited from possessing the firearms. When asked by agents whether he knew that he could not possess the firearms he stated, "that's what they say." The defendant's wife was also questioned about the firearms and claimed that she did not know of the existence of the firearms. The

defendant was in possession of two firearms, numerous rounds of ammunition at his residence, and thousands more rounds of ammunition located in a trailer the defendant did not mention. The caliber of ammunition recovered from the trailer also matches the caliber on the Ruger Mini 14 rifle. The evidence is this case is strong and weighs in favor of detention.

## V. The history and characteristics of the person

The defendant's history and characteristics are concerning to the government both as it relates to the defendant's flight risk and risk of danger to the community. Although the defendant's convictions date back to 2003, that conduct and the currently charged conduct is consistent—the defendant does not feel the need to comply with the law.

On January 16, 2003, Bridget Bliss obtained a plenary order of protection against the defendant in Shelby County case docket 2002-OP-136. Less than two months later, on March 2, 2003, the defendant was charged in Christian County case docket 03-CM-48 with battery for spitting on Ms. Bliss' face and hair. On March 18, 2003, the defendant pleaded guilty to the misdemeanor battery charge and was sentenced to one year of conditional discharge with the requirement that the defendant not violate another criminal or traffic law in any jurisdiction, and to complete anger

management classes. Less than two months later, on May 12, 2003, a petition to revoke the defendant's conditional discharge was filed because the defendant failed to complete anger management classes. On May 15, 2003, the petition was amended to include a May 4, 2003 offense from driving under the influence. On September 30, 2003, the defendant failed to appear in court on the petition to revoke. On December 11, 2003, the defendant admitted to the petition, his conditional discharge was revoked and he was sentenced to 60 days in jail.

The defendant was also charged in Shelby County Circuit Court with violation of an order of protection, in case docket 2003-CM-46. On April 21, 2003, the defendant pleaded guilty and was sentenced to one year of conditional discharge.

In May 2003, the defendant was charged with six counts of felony violation of an order of protection in Shelby County Circuit Court case docket 2003-CF-68. On October 2, 2003, the defendant was sentenced to 80 days in jail and 2 years probation. The defendant was also charged in a second case of felony violation of an order of protection in Shelby County Circuit Court case docket 2003-CF-149, but that case was dismissed on October 2, 2003. Although the online docket is not clear, the 2003-CF-149 and 2003-

CF-68 case were resolved on the same day, likely as part of a packaged plea agreement.

The defendant is described by others as anti-government, a doomsday prepper, and expressing animus towards other racial and religious groups. Some items recovered from the defendant's premises substantiate those claims. See Government's Exhibit 8. The defendant also stated he was a card carrying member of "Oath Keepers" and a member of the Illinois State Militia.[2] Although freedom of expression is a right in the United States, all citizens are required to comply with the rules and regulations imposed by local, state, and federal governments. The defendant not only has a history of non-compliance, but that history involves non-compliance against rules created to ensure the safety of others. Moreover, here, the defendant knew he was not lawfully allowed to possess firearms or ammunition, and did so in spite of the law. During the defendant's initial appearance, when asked by the Court if he understood the charges, the defendant stated that he understood, but did not agree with them. This type of thinking makes it hard

---

2 The Southern Poverty Law Center describes Oath Keepers as one of the largest radical antigovernment groups in the United States. See https://www.splcenter.org/fighting-hate/extremist-files/group/oath-keepers. The Anti-Defamation League described Oath Keepers as "an anti-government right-wing fringe organization." See https://www.adl.org/resources/profiles/the-oath-keepers.

to believe that the defendant would be willing to follow limitations and conditions placed on him by the Court, when the defendant has specifically expressed his lack of belief in authority. The defendant's history and characteristics weigh in favor of detention.

## VI. <u>The nature and seriousness of the danger to any person or the community that would be posed by release</u>

The defendant poses a risk to the community if released. This case is not a typical gun case. The defendant is a felon in possession of an arsenal of ammunition, a rifle, and a handgun. Although the government does not assert that the defendant planned any attacks against anyone, it would be remiss not to note that the Tree of Life Synagogue shooter was only armed with a hand gun and a similar semi-automatic rifle. These weapons are inherently dangerous, which is why those previously convicted of felonies are prohibited from having them.

Moreover, the defendant's minor son admitted to law enforcement that he engaged in racist and anti-Semitic conversations online. At this time, it is unclear if those conversations resulted in an attempted arson on a Jewish nursing home in Massachusetts, in a town specifically referenced by the minor in the chats. Although the defendant denied instilling these beliefs in his son, the language the defendant used to describe Jews and "blacks"

during his interview is relatively consistent with the ideology espoused in the chats. The defendant's decision to have illegal firearms in his garage, accessible by those who live in the household, including the minor, creates danger in the community.

### VII. Conclusion

Based on the facts stated above, no condition or combination of conditions will reasonably assure the defendant's appearance as required, and the safety of any other person and the community.

WHEREFORE, the United States requests this court enter an order detaining the defendant, Randall Burrus, pursuant to Title 18, United States Code, Section 3142(e), pending trial or other resolution of this case.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

 /s/ Crystal C. Correa
Crystal C. Correa, IL Bar No. 6307734
U.S. Attorney's Office
318 South 6th Street
Springfield, IL 62701
Telephone: 217/492-4450
Crystal.Correa@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Johanes Maliza

                              */s/ Crystal Correa*
                              Crystal C. Correa
                              Assistant United States Attorney